This is a suit for $682.90 representing the amount allegedly due for printed materials sold and delivered to the defendant. The defendant denied the sale and delivery of the merchandise. The plaintiff has appealed from a judgment dismissing his suit.
Plaintiff is the proprietor of a printing establishment and the defendant was a newly organized investment corporation. The defendant employed one Hiram Jones as its exclusive sales director and consultant to assist the officers and directors of the corporation in the sale of its stock. The contract of employment stipulated, among other things, that Jones was to receive 15% of the selling price of each share of Greater Louisiana Corporation stock and that he, Jones, would be responsible and pay for all commissions to stock salesmen and the cost of all advertising, printing and office supplies, including particularly the cost of printing a prospectus, stock subscription agreements and all other sales materials.
It is the plaintiff's testimony that he was contacted by a man named Gorney *Page 772 
regarding the printing of a prospectus and gave Gorney an estimate on the work. He had several conversations with Gorney, with a Mr. Miceli, a Dr. Gray and Hiram Jones concerning the prospectus and, after receiving an oral order from one of them, who possibly could have been Jones, submitted proofs and then printed the prospectus. While printing the prospectus he received a second order from either Jones or Gorney for stock subscription forms and a third order from Jones for business cards. He had no information about the contract of employment between the defendant and Jones nor about the provision therein that Jones, and not the corporation, was required to bear the cost of the merchandise ordered. It was established that Miceli and Dr. Gray were directors and, for the purpose of selling corporate securities, agents of the defendant corporation. Gorney was the defendant's agent for the sale of securities. It was also established that the agents' fees of Miceli, Gray and Gorney were paid by the corporation and that both the prospectus and stock subscription forms were prepared, proofread and approved by the defendant's attorney and secretary.
The defendant made use of an office in New Orleans occupied by its president, an office on the Airline Highway in Jefferson Parish which belonged to the Jefferson Life Insurance Company, some of the members of the board of directors of the insurance company being also members of the board of the defendant, and an office on Metairie Road in the Parish of Jefferson which carried the name of the defendant corporation and was used by Jones and his staff with the rent and utilities being paid by the defendant. Some of the merchandise was personally picked up, and receipted for, by Dr. Gray. The plaintiff unsuccessfully attempted to deliver the larger part of the merchandise to the defendant's office on Metairie Road and instead made delivery at the office of the insurance company on Airline Highway, where it was receipted for (the record does not reveal by whom) by means of a stamp bearing the name of the defendant corporation. The balance of the merchandise apparently was received by Jones himself. This stamp bearing the corporate name appears on several documents introduced in evidence, had been in the possession of and used by Jones, and at the time of trial was in the possession of the corporation, Jones having left and his whereabouts not being known. The merchandise left by Jones was still in the possession of the defendant at the time of the trial but apparently not then being used.
The defense testimony generally was to the effect that Jones alone, and not the corporation, ordered, received and used the merchandise. Miceli and Dr. Gray testified that they did not participate in the discussions and orders as described by the plaintiff but merely happened to be present on one or two occasions when these discussions took place between Jones and Goldman. In addition, Dr. Gray testified that he had picked up the package of merchandise at the request of, and delivered the same to, Jones without knowing what the package contained. However, the receipt he gave was signed by Dr. Gray as Director and plainly states that the merchandise, consisting of 500 sets of stock subscriptions, was received by "Greater La. Corp.". The president of the defendant corporation testified that no control was exercised by the corporation over Jones and that he had no knowledge of plaintiff's claim against the defendant until a demand was made upon him as president, which claim was promptly denied. No attempt was ever made to return the merchandise.
In this court the plaintiff relies on two contentions:
First, that the trial court erred in permitting introduction into evidence, over plaintiff's objection, of the contract of employment between defendant and Jones and that if this document had been excluded the plaintiff would clearly be entitled to a judgment in his favor. *Page 773 
Second, that the defendant clothed Jones with apparent authority and later ratified his acts to the extent that it is now estopped from repudiating its obligation to pay the plaintiff.
[1] Plaintiff's first contention is not valid. He now argues that the document was inadmissible because it involves a special defense which has not been specially pleaded and thus enlarges the pleadings. While it is true that the answer is in the form of a general denial and no affirmative defense was pleaded, it is also true that the plaintiff's present reason for the objection was not urged before the trial court. The plaintiff did make a timely objection but it was based solely on the grounds that the defendant was estopped from denying its liability for the actions of Jones by virtue of the fact that it received, used and never returned the merchandise. The objection was not well founded and was properly overruled by the court. The objection as made involved only an issue in the trial, evidence concerning which the court was required to take into consideration in order to arrive at a proper finding of facts. The court therefore was given no opportunity to rule upon, and the plaintiff voiced no objection to, the absence of an affirmative defense and the now alleged enlargement of the pleadings. An objection to the admission of evidence should be explicit and the trial court need only consider the grounds relied on by the objector.
[2] Plaintiff's second contention is well founded. While it is true that statements or representations made only by an agent as to his authority are not sufficient in themselves to bind the corporation (O. E. Haring, Inc. v. Boylan's Private Police, La. App., 56 So.2d 588) and that a person dealing with an agent must use reasonable diligence and prudence to determine whether the agent acts within the scope of his authority (13 Am.Jur., Corporations § 891), we are of the opinion that the defendant's actions in clothing Jones with apparent authority and in ratifying his acts are sufficient to make it liable for the purchase of the prospectus and stock subscription forms.
[3] Where one, by acts or conduct, has knowingly caused or permitted another to act within the latter's apparent authority as his agent to the injury of third persons who themselves have acted in good faith and with reasonable prudence, he is estopped from denying the agency or the authority. See Vicknair v. Bonneval, La. App., 47 So.2d 57; Laroque v. Ovalasiti, La. App., 13 So.2d 747, 19 C.J.S. Corporations § 996.
[4] We are satisfied that the plaintiff acted in good faith and with reasonable prudence. The defendant not only clothed Jones with authority to act, it actually employed him as its sales director and consultant, keeping secret, despite opportunities to otherwise inform the plaintiff, the limitations of his authority to bind the corporation for the purchase of things essential and necessary in the conduct of his work and which were used, in large measure, for the benefit of the corporation. And the plaintiff had every right to believe that he was dealing directly with the corporation when the first portion of the order was picked up by a director who receipted for the same on behalf of the corporation. Many of the other facts above set forth point to the same conclusion.
In addition, the rule that the retaining of the merchandise, or a part thereof, is equivalent to a ratification of an unauthorized contract of sale (LSA — Civil Code, Art. 1816; Security Finance Co. v. L. S. Edmonds Co., 16 La. App. 358, 133 So. 765) is applicable here, for the merchandise, or at least a part thereof, was not only received by the defendant and used for its benefit, but all of the unused portion was retained by the defendant.
The business cards purchased by Jones were for his own purposes and not, as is true of the prospectus and stock subscription forms, essential and necessary to his *Page 774 
work and used directly for the corporation's benefit. Therefore the cost of these cards, $6.70, is not included in the judgment awarded herein.
For the reasons assigned it is ordered that the judgment appealed from be reversed, annulled and set aside and that there be judgment in favor of the plaintiff and against the defendant in the full sum of $676.20, together with legal interest thereon from date of judicial demand until paid, defendant to pay all costs.
Reversed.